No. 23-3768

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

LANCE HARA p/k/a VICKY VOX,

*Plaintiff-Appellant,*

v.

NETFLIX, INC.; TITMOUSE, INC.; LOL SEND, INC.; GABE LIEDMAN; FREMULON, LLC; MICHAEL SCHUR; UNIVERSAL TELEVISION, LLC; HAZY MILLS PRODUCTIONS, INC.; SEAN HAYES; TODD MILLINER; BEN HEINS; 3 ARTS ENTERTAINMENT, LLC; DAVID MINER; AND MAX SILVESTRI,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California
No. 2:23-cv-03456-RGK-AS
Hon. R. Gary Klausner

---

## APPELLANT'S OPENING BRIEF

---

Heather L. Blaise, Esq.
John H. Mattheessen, Esq.
VALKYRIE LAW GROUP, P.C.
1 N. State Street, Suite 1500
Chicago, Illinois 60602
Telephone: (312) 448-6602
Email: hblaise@valklaw.com
Email: jmattheessen@valklaw.com

*Attorneys for Appellant Lance Hara p/k/a Vicky Vox*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................. iii

INTRODUCTION ...........................................................................1

JURISDICTIONAL STATEMENT .........................................................5

STATUTORY AND REGULATORY AUTHORITIES..............................6

ISSUES PRESENTED ......................................................................31

STATEMENT OF THE CASE ...........................................................32

SUMMARY OF THE ARGUMENT....................................................38

STANDARD OF REVIEW ...............................................................39

ARGUMENT................................................................................40

    I.    The district court erred in failing to apply the likelihood of confusion test in light of the United States Supreme Court's ruling in *Jack Daniel's*................................................................................40

    II.   The district court erred by applying the *Rogers* test because *Rogers* is inapplicable when an infringer trades on the goodwill of a trademark owner and creates a false endorsement. ...............................................45

        A.   *Jack Daniel's* rejected the use of *Rogers* when an infringer uses a mark as a mark. ....................................................................45

        B.   *Rogers* does not apply here because Defendants traded on the goodwill of Plaintiff's image and likeness and created a false endorsement, association and/or affiliation. .............................49

C.     This Honorable Court should require the district court to consider this case in conformity with *Jack Daniel's* and should direct the district court to require the Defendants to answer and proceed to discovery..................................................55

CONCLUSION..........................................................................................61

STATEMENT OF RELATED CASES ....................................................62

CERTIFICATE OF COMPLIANCE .......................................................63

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Activision Publ'g, Inc. v. Warzone.Com, LLC*,
  621 F. Supp. 3d 1090 (C.D. Cal. 2022)..............................................56

*Activision Publ'g, Inc. v. Warzone.Com, LLC*,
  No. 22-55831, 2023 U.S. App. LEXIS 28908
  (9th Cir. Oct. 25, 2023) ................................... 37, 55, 56, 58

*Ameritech, Inc. v. Am. Info. Techs. Corp.*,
  811 F.2d 960 (6th Cir. 1987) .............................................42

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ............................... 40, 41, 45, 54, 55, 59

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................54

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................54

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) ...........................................42

*Davis v. Amazon.Com, Inc.*,
  No. 2:21-cv-02090-JVS(JDEx), 2023 U.S. Dist. LEXIS 197341
  (C.D. Cal. Nov. 2, 2023) .................................................53

*Diece-Lisa Indus. v. Disney Enters. (Diece-Lisa Indus. I)*,
  No. CV 20-09147 TJH (JCx), 2021 U.S. Dist. LEXIS 146187
  (C.D. Cal. July 7, 2021) ............................................. 51, 52

*Diece-Lisa Indus. v. Disney Store USA, LLC (Diece-Lisa Indus. II)*,
  No. 21-55816, 2023 U.S. App. LEXIS 23211
  (9th Cir. Aug. 25, 2023)....................................... 37, 52, 54, 55, 56, 58

*Diece-Lisa Indus. v. Disney Store USA, LLC*,
    143 S. Ct. 2634 (2023) ................................................................ 52, 56

*Diece-Lisa Indus. v. Disney Store USA, LLC*,
    No. 21-55816, 2022 U.S. App. LEXIS 15935
    (9th Cir. June 9, 2022).................................................................51

*Dreamwerks Prod. Grp. v. SKG Studio*,
    142 F.3d 1127 (9th Cir. 1998) ...................................................41

*Gompper v. VISX, Inc.*,
    298 F.3d 893 (9th Cir. 2002) .................................................. 54, 55

*HomeVestors of Am., Inc. v. Warner Bros. Discovery, Inc.*,
    Civil Action No. 22-1583-RGA, 2023 U.S. Dist. LEXIS 187653
    (D. Del. Oct. 18, 2023)................................................................53

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
    2 F.4th 1150 (9th Cir. 2021) ...................................... 41, 42, 44, 54, 55

*Jack Daniel's Properties, Inc. v. VIP Products, LLC*,
    143 S. Ct. 1578 (2023) ..... 36, 42, 43, 44, 45, 46, 47, 48, 49, 50, 57, 59

*Marketquest Grp., Inc. v. BIC Corp.*,
    862 F.3d 927 (9th Cir. 2017) ................................................. 41, 44

*Mattel, Inc. v. MCA Records*,
    296 F.3d 894 (9th Cir. 2002) ................................................. 42, 50

*Mga Entm't Inc. v. Harris*,
    No. CV 20-11548 JVS (AGRx), 2023 U.S. Dist. LEXIS 171072,
    (C.D. Cal. Sep. 15, 2023) ............................................................53

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) .........................................................39

*Punchbowl, Inc. v. AJ Press, LLC (Punchbowl I)*,
    52 F.4th 1091 (9th Cir. 2022) .....................................................57

iv

*Punchbowl, Inc. v. AJ Press, LLC (Punchbowl II)*,
  78 F.4th 1158 (9th Cir. 2023) ............................................................57

*Punchbowl, Inc. v. AJ Press, LLC (Punchbowl III)*,
  90 F.4th 1022 (9th Cir. 2024) ............................... 37, 55, 56, 57, 58, 59

*Rogers v. Grimaldi*,
  875 F.2d 994 (2nd Cir. 1989) .................................... 36, 42, 43, 50, 60

*Surfvivor Media, Inc. v. Survivor Prods.*,
  406 F.3d 625 (9th Cir. 2005) ...............................................................41

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*,
  221 F. Supp. 2d 410 (S.D.N.Y. 2002)...................................................47

*Twentieth Century Fox Television v. Empire Distrib.*,
  875 F.3d 1192 (9th Cir. 2017) ...................................................... 50, 51

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*,
  88 F.4th 125 (2nd Cir. 2023) ...............................................................52

*Waits v. Frito-Lay, Inc.*,
  978 F.2d 1093 (9th Cir. 1992) ...................................................... 40, 44

*West Virginia State Board of Education v. Barnette*,
  319 U.S. 624 (1943) ............................................................................60

## Statutes

15 U.S.C. § 1114.............................................................................6, 49

15 U.S.C. § 1125......................................................................... 14, 48, 49

28 U.S.C. § 1291.............................................................................5, 27

28 U.S.C. § 1331.............................................................................5, 28

28 U.S.C. § 1338.............................................................................5, 28

28 U.S.C. § 1367.............................................................................5, 29

**Other Authorities**

Brief of Plaintiff-Appellant, *Diece-Lisa Indus v. Disney Store USA, LLC,* No. 21-55816 (9th Cir. December 8, 2021) .........................................56

Oral Argument, *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024) (No. 21-55881), https://www.youtube.com/ watch?v=qDaAviVTzqs .......................................................................58

Order for Additional Briefing, *Punchbowl, Inc. v. AJ Press, LLC*, No. 2:21-cv-03010-SVW-MAR (C.D. Cal. January 25, 2024), ECF No. 47.....57

**Constitutional Provisions**

U.S. Const. amend. I ...........................................................................6

# INTRODUCTION

The first episode of the sixth season of the Netflix series *Black Mirror*, "Joan is Awful," depicts a world where a streaming service named Streamberry, parodying Netflix, broadcasts a fictionalized version of events from "Joan's" life in near real time. In Streamberry's version, "Joan" is played by a computer-generated version of Salma Hayek's likeness. Through its use of Hayek's likeness, Streamberry depicts "Joan" as extremely unlikeable, leading to Joan losing her job and significant other. In turn, "Joan" begins engaging in increasingly profane behavior to attract Hayek's attention. In the episode, Hayek is unable to stop Streamberry from using her likeness due to a licensing agreement, so she and "Joan" set off to destroy the computer generating the program. In this fictional allegory, the actions of "Streamberry" in usurping the images and likenesses of "Joan" and Hayek, respectively, are legally permissible due to the terms and conditions of Streamberry's fictional agreements. Unlike the dystopian world depicted in Netflix's *Black Mirror* episode, real-world people, including celebrities, hold the right to control the use of their likeness. Plaintiff was therefore shocked to witness her likeness being used without her consent in the real world by Netflix and the other Defendants without any agreement or authorization whatsoever.

1

This is a case of trademark infringement creating a false endorsement and market confusion resulting from titans of the entertainment industry trading on the goodwill of an individual artist. In or around 2021, Defendants, including Netflix, developed and advertised *Q-Force*, a cartoon series about an LGBTQ+ spy agency (hereinafter "*Q-Force*"). However, long before *Q-Force*, Plaintiff Lance Hara created and marketed her drag brand and persona known as "Vicky Vox," including her signature look and mannerisms. As Vicky Vox, Plaintiff became wildly popular and well known through a variety of performing arts, including hosting drag events, and performing in drag events, acting in television and movies, voice acting, singing, podcasting, reality television, and live theater.

After Plaintiff worked tirelessly to develop her First Amendment protected character Vicky Vox into a prominent figure in the LGBTQ+ community, Defendants took Plaintiff's image and likeness and included a crude caricature of Plaintiff in *Q-Force* and in Defendants' advertisements for no other purpose than to trade on Plaintiff's goodwill. As a result of Defendants' unauthorized use of Plaintiff's image and likeness, consumers were falsely led to the conclusion that Plaintiff affiliated with and endorsed Defendants' goods and services, including but not limited to, *Q-Force*.

In addition to marketing and profiting from *Q-Force*, Defendants used Plaintiff's image and likeness to market and profit from their individual services,

2

and to sell merchandise that had no relationship whatsoever to *Q-Force*. Defendants did not seek nor obtain Plaintiff's consent for their use of Plaintiff's image and likeness, and Plaintiff would never have agreed for her creative work to be reduced to a harmful stereotype or to designate her endorsement of and/or affiliation with Defendants' and their goods and/or services. Plaintiff was not compensated in any way by Defendants for their unauthorized use of Plaintiff's image and likeness.

When Plaintiff attempted to protect the trademark embodied in her image and likeness, the district court, citing *Rogers v. Grimaldi*, found that Defendants were entitled to protection under the First Amendment and dismissed Plaintiff's claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) without conducting any likelihood of confusion analysis. However, considering the Supreme Court's ruling in *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, *Rogers* is not the appropriate standard in cases – such as here – where a mark is used as a mark. Furthermore, even when viewed under the threshold *Rogers* test, the Plaintiff pled facts sufficient to reach an inquiry into the likelihood of confusion, rendering dismissal improper. As argued herein, the district court committed reversible error when it dismissed Plaintiff's claims. This Honorable Court now has the opportunity to restore Plaintiff's right to protect against infringement from

the mighty companies and individuals who have profited from, tarnished, and falsely associated with Plaintiff's goodwill in the LGBTQ+ community.

## JURISDICTIONAL STATEMENT

This case is an appeal from the October 26, 2023 Order of the U.S. District Court for the Central District of California, in which the district court dismissed Plaintiff's claims with prejudice. The district court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 (federal question) and supplemental jurisdiction over Plaintiff's State claims pursuant to 28 U.S.C. § 1367. Since the October 26, 2023 Order was a final decision from a U.S. District Court that disposed of all of Plaintiff's claims, this Honorable Court has jurisdiction over this appeal pursuant 28 U.S.C. § 1291. *See* 1-ER-2-3. Plaintiff timely filed a notice of appeal on November 17, 2023. 3-ER-434-39.

## STATUTORY AND REGULATORY AUTHORITIES

**United States Constitution, First Amendment (U.S. Const. amend. I)**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**15 U.S.C. § 1114**

**(1)** Any person who shall, without the consent of the registrant—

    **(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

    **(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

As used in this paragraph, the term "any person" includes the United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, or other persons acting for the United States and with the authorization and consent of the United States, and any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. The United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, other persons acting for the United States and with the authorization and consent of the United States, and any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

**(2)** Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title shall be limited as follows:

**(A)** Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125(a) of this title shall be entitled as against such infringer or violator only to an injunction against future printing.

**(B)** Where the infringement or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication as defined in section 2510(12) of title 18, the remedies of the owner of the right infringed or person bringing the action under section 1125(a) of this title as against the publisher or distributor of such newspaper, magazine, or other similar periodical or electronic communication shall be limited to an injunction against the presentation of such advertising matter in future issues of such newspapers, magazines, or other similar periodicals or in future transmissions of such electronic communications. The limitations of this subparagraph shall apply only to innocent infringers and innocent violators.

**(C)** Injunctive relief shall not be available to the owner of the right infringed or person bringing the action under section 1125(a) of this title with respect to an issue of a newspaper, magazine, or other similar periodical or an

electronic communication containing infringing matter or violating matter where restraining the dissemination of such infringing matter or violating matter in any particular issue of such periodical or in an electronic communication would delay the delivery of such issue or transmission of such electronic communication after the regular time for such delivery or transmission, and such delay would be due to the method by which publication and distribution of such periodical or transmission of such electronic communication is customarily conducted in accordance with sound business practice, and not due to any method or device adopted to evade this section or to prevent or delay the issuance of an injunction or restraining order with respect to such infringing matter or violating matter.

**(D)**

    **(i)**

        **(I)** A domain name registrar, a domain name registry, or other domain name registration authority that takes any action described under clause (ii) affecting a domain name shall not be liable for monetary relief or, except as provided in subclause (II), for injunctive relief, to any person for such action, regardless of whether the domain name is finally determined to infringe or dilute the mark.

9

**(II)** A domain name registrar, domain name registry, or other domain name registration authority described in subclause (I) may be subject to injunctive relief only if such registrar, registry, or other registration authority has—

> **(aa)** not expeditiously deposited with a court, in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name;

> **(bb)** transferred, suspended, or otherwise modified the domain name during the pendency of the action, except upon order of the court; or

> **(cc)** willfully failed to comply with any such court order.

**(ii)** An action referred to under clause (i)(I) is any action of refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name—

> **(I)** in compliance with a court order under section 1125(d) of this title; or

**(II)** in the implementation of a reasonable policy by such registrar, registry, or authority prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark.

**(iii)** A domain name registrar, a domain name registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name.

**(iv)** If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

**(v)** A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

**(E)** As used in this paragraph—

**(i)** the term "violator" means a person who violates section 1125(a) of this title; and

**(ii)** the term "violating matter" means matter that is the subject of a violation under section 1125(a) of this title.

**(3)**

**(A)** Any person who engages in the conduct described in paragraph (11) of section 110 of title 17 and who complies with the requirements set forth in that paragraph is not liable on account of such conduct for a violation of any right under this chapter. This subparagraph does not preclude liability, nor shall it be construed to restrict the defenses or limitations on rights granted under this chapter, of a person for conduct not described in paragraph (11) of

section 110 of title 17, even if that person also engages in conduct described in paragraph (11) of section 110 of such title.

**(B)** A manufacturer, licensee, or licensor of technology that enables the making of limited portions of audio or video content of a motion picture imperceptible as described in subparagraph (A) is not liable on account of such manufacture or license for a violation of any right under this chapter, if such manufacturer, licensee, or licensor ensures that the technology provides a clear and conspicuous notice at the beginning of each performance that the performance of the motion picture is altered from the performance intended by the director or copyright holder of the motion picture. The limitations on liability in subparagraph (A) and this subparagraph shall not apply to a manufacturer, licensee, or licensor of technology that fails to comply with this paragraph.

**(C)** The requirement under subparagraph (B) to provide notice shall apply only with respect to technology manufactured after the end of the 180-day period beginning on April 27, 2005.

**(D)** Any failure by a manufacturer, licensee, or licensor of technology to qualify for the exemption under subparagraphs (A) and (B) shall not be construed to create an inference that any such party that engages in conduct

described in paragraph (11) of section 110 of title 17 is liable for trademark infringement by reason of such conduct.

**15 U.S.C. § 1125**

**(a) Civil action.**

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

**(2)** As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State

acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this Act in the same manner and to the same extent as any nongovernmental entity.

**(3)** In a civil action for trade dress infringement under this Act for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

**(b) Importation.** Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States or admitted to entry at any customhouse of the United States. The owner, importer, or consignee of goods refused entry at any customhouse under this section may have any recourse by protest or appeal that is given under the customs revenue laws or may have the remedy given by this Act in cases involving goods refused entry or seized.

**(c) Dilution by blurring; dilution by tarnishment.**

**(1)** Injunctive relief. Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or

15

absence of actual or likely confusion, of competition, or of actual economic injury.

**(2)** Definitions.

    **(A)** For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

        **(i)** The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

        **(ii)** The amount, volume, and geographic extent of sales of goods or services offered under the mark.

        **(iii)** The extent of actual recognition of the mark.

        **(iv)** Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

    **(B)** For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name

16

and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

> **(i)** The degree of similarity between the mark or trade name and the famous mark.

> **(ii)** The degree of inherent or acquired distinctiveness of the famous mark.

> **(iii)** The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

> **(iv)** The degree of recognition of the famous mark.

> **(v)** Whether the user of the mark or trade name intended to create an association with the famous mark.

> **(vi)** Any actual association between the mark or trade name and the famous mark.

**(C)** For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

**(3)** Exclusions. The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:

17

**(A)** Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with—

> **(i)** advertising or promotion that permits consumers to compare goods or services; or
>
> **(ii)** identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

**(B)** All forms of news reporting and news commentary.

**(C)** Any noncommercial use of a mark.

**(4)** Burden of proof. In a civil action for trade dress dilution under this Act for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that—

**(A)** the claimed trade dress, taken as a whole, is not functional and is famous; and

**(B)** if the claimed trade dress includes any mark or marks registered on the principal register, the unregistered matter, taken as a whole, is famous separate and apart from any fame of such registered marks.

18

**(5)** Additional remedies. In an action brought under this subsection, the owner of the famous mark shall be entitled to injunctive relief as set forth in section 34. The owner of the famous mark shall also be entitled to the remedies set forth in sections 35(a) and 36, subject to the discretion of the court and the principles of equity if—

**(A)** the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after the date of enactment of the Trademark Dilution Revision Act of 2006 [enacted Oct. 6, 2006]; and

**(B)** in a claim arising under this subsection—

**(i)** by reason of dilution by blurring, the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark; or

**(ii)** by reason of dilution by tarnishment, the person against whom the injunction is sought willfully intended to harm the reputation of the famous mark.

**(6)** Ownership of valid registration a complete bar to action. The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register under this Act shall be a

complete bar to an action against that person, with respect to that mark, that—

> **(A)** is brought by another person under the common law or a statute of a State; and

> **(B)**

>> **(i)** seeks to prevent dilution by blurring or dilution by tarnishment; or

>> **(ii)** asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement.

**(7)** Savings clause. Nothing in this subsection shall be construed to impair, modify, or supersede the applicability of the patent laws of the United States.

**(d) Cyberpiracy prevention.**

> **(1)**

>> **(A)** A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

**(i)** has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

**(ii)** registers, traffics in, or uses a domain name that—

**(I)** in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

**(II)** in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

**(III)** is a trademark, word, or name protected by reason of section 706 of title 18, United States Code, or section 220506 of title 36, United States Code.

**(B)**

**(i)** In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to—

**(I)** the trademark or other intellectual property rights of the person, if any, in the domain name;

**(II)** the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

**(III)** the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

**(IV)** the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

**(V)** the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

**(VI)** the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering

of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

**(VII)** the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

**(VIII)** the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

**(IX)** the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

**(ii)** Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the

person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

**(C)** In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

**(D)** A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

**(E)** As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

**(2)**

**(A)** The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if—

**(i)** the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and

**(ii)** the court finds that the owner—

> **(I)** is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

> **(II)** through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by—

>> **(aa)** sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

>> (bb) publishing notice of the action as the court may direct promptly after filing the action.

**(B)** The actions under subparagraph (A)(ii) shall constitute service of process.

**(C)** In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which—

> **(i)** the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or
>
> **(ii)** documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.

**(D)**

> **(i)** The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall—
>
> > **(I)** expeditiously deposit with the court documents sufficient to establish the court's control and authority

26

regarding the disposition of the registration and use of the

domain name to the court; and

**(II)** not transfer, suspend, or otherwise modify the

domain name during the pendency of the action, except

upon order of the court.

**(ii)** The domain name registrar or registry or other domain name

authority shall not be liable for injunctive or monetary relief

under this paragraph except in the case of bad faith or reckless

disregard, which includes a willful failure to comply with any

such court order.

**(3)** The civil action established under paragraph (1) and the in rem action

established under paragraph (2), and any remedy available under either such

action, shall be in addition to any other civil action or remedy otherwise

applicable.

**(4)** The in rem jurisdiction established under paragraph (2) shall be in

addition to any other jurisdiction that otherwise exists, whether in rem or in

personam.

## 28 U.S.C. § 1291

The courts of appeals (other than the United States Court of Appeals for the

Federal Circuit) shall have jurisdiction of appeals from all final decisions of the

district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**28 U.S.C. § 1331**

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**28 U.S.C. § 1338**

**(a)** The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights. For purposes of this subsection, the term "State" includes any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, American Samoa, Guam, and the Northern Mariana Islands.

**(b)** The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws.

**(c)** Subsections (a) and (b) apply to exclusive rights in mask works under chapter 9 of title 17, and to exclusive rights in designs under chapter 13 of title 17, to the same extent as such subsections apply to copyrights.

**28 U.S.C. § 1367**

**(a)** Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

**(b)** In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules,

when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

**(c)** The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

> **(1)** the claim raises a novel or complex issue of State law,

> **(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

> **(3)** the district court has dismissed all claims over which it has original jurisdiction, or

> **(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

**(d)** The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

**(e)** As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

## ISSUES PRESENTED

1. Whether the district court erred in failing to apply the likelihood of confusion test in light of the United States Supreme Court's ruling in *Jack Daniel's*.

2. Whether the district court erred by applying the *Rogers* test where an infringer trades on the goodwill of a trademark owner and creates a false endorsement.

3. Whether the district court erred in applying the *Rogers* test in dismissing Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) when Plaintiff alleged actual consumer confusion.

## STATEMENT OF THE CASE

Plaintiff Lance Hara is a well-known Drag Queen in Hollywood who performs under the name Vicky Vox (hereinafter "Plaintiff"). 2-ER-243. Throughout her career, Plaintiff has hosted and appeared at live events, performed as a singer, voice-over actress, stage actress, film, web show, and tv actress, runway model, and podcaster. 2-ER-243-44. Plaintiff has also served as a brand ambassador for a line of cosmetics. 2-ER-243. Plaintiff exclusively holds the commercial right to grant the use of her image and likeness and the goodwill associated therewith to create the appearance of an endorsement, affiliation and/or association. 2-ER-243-44; 251-52.

On or about June of 2021, Defendant Netflix posted a commercial advertisement entitled the "Official Teaser" for *Q-Force* (hereinafter "the June 2021 Advertisement"), which contained Plaintiff's likeness. 2-ER-245-47. In addition to advertising *Q-Force*, the June 2021 Advertisement also advertised Defendant Netflix's subscription service and a variety of unrelated commercial products, including without limitation Defendants' various goods and services. 2-ER-247-50. Plaintiff's image is featured prominently in the June 2021 Advertisement, with Plaintiff's image remaining on screen for more than 12% of the duration. 2-ER-250. In addition, Defendants commercially exploited Plaintiff's image, likeness and goodwill embodied in the still image (the "Still").

2-ER-249. The Defendants used and continue to use to market their goods and services, including those unrelated to the distribution of *Q-Force*. 2-ER-246; 254-56. Notably, Plaintiff's image and likeness is prominently featured in the Still, taking up more than 20% of the frame. 2-ER-249.

Defendants argue that their use of Plaintiff's image and likeness in *Q-Force* and its advertisements was artistically relevant. 2-ER-146-47. However, Defendant Liedman publicly admitted that the characters in *Q-Force* are based on real life people, that Defendants wanted to hire someone from the drag community, and that the primary advertisement for *Q-Force* was created by a huge corporation and intentionally set to coincide with LGBTQ+ pride month (June). 2-ER-242; 251. As such, Defendants' use of Plaintiff's image and likeness served only to lead viewers to falsely believe that Plaintiff had endorsed, was affiliated and/or associated with *Q-Force*. 2-ER-246. Plaintiff was not asked for permission for the use of her image, let alone for her endorsement of *Q-Force*, the Defendants and/or the Defendants' wholly unrelated goods and services. 2-ER-251. Neither was she asked for permission when her image was used again in the body of *Q-Force*, released three months later. *Id.*

By using Plaintiff's image and likeness, Defendants falsely promoted Plaintiff's endorsement of both *Q-Force* and the June 2021 Advertisement. 2-ER-250-51. Defendants' false promotion of Plaintiff's endorsement damaged Plaintiff

in many ways, particularly because *Q-Force* and the June 2021 Advertisement were met with substantial criticism for their enforcement of harmful stereotypes of the LGBTQ+ community. 2-ER-250-51. By using Plaintiff's image and likeness in both *Q-Force* and the June 2021 Advertisement, Defendants sought to ward off such criticism by leveraging Plaintiff's goodwill in the LGBTQ+ community to falsely convey her approval of the content of *Q-Force*, the June 2021 Advertisement, and Defendants' goods and services. 2-ER-251-52.

On May 5, 2023, Plaintiff filed her Complaint Damages for: 1) False Endorsement (Section 43(A) of the Lanham Act, 15 U.S.C. § 1125(A); 2) Violations of California Statutory Right of Publicity (Cal. Civ. Code § 3344); and 3) Violations of California Common Law Right of Publicity. 3-ER-425-433. On July 19, 2023, Defendants filed a motion to dismiss Plaintiff's complaint, which was subsequently fully briefed by the parties. *See* 3-ER-338-90; 2-ER-273-97.

On August 23, 2023, the district court granted Defendants' motion with respect to the Lanham Act claim and granted Plaintiff leave to amend the Complaint. 2-ER-261-66. In doing so, the district court incorrectly posited that Plaintiff had not set forth sufficient allegations regarding the characteristics that Defendants' animated character shares with Plaintiff. 2-ER-263. The district court then summarily found that *Q-Force* and its advertisements "are expressive works entitled to heightened First Amendment protection" and that Defendants' use of

34

Plaintiff's image and likeness was artistically relevant under the first prong of *Rogers*. 2-ER-264. Finally, the district court incorrectly found that Plaintiff failed to "plausibly allege that [Defendants] explicitly misled viewers" about the source of *Q-Force* and its advertisements. 2-ER-265. In an aside, the district court also stated in its August 23, 2023 Order that the individual roles of the Defendants were not clear in the Complaint. 2-ER-261.

On September 6, 2023, Plaintiff filed her First Amended Complaint, which added additional Defendants and claims, and sought to address the matters raised in the district court's August 23, 2023 Order. 2-ER-237-60. Namely, Plaintiff amended her Complaint to include detailed factual allegations regarding: (a) the individual roles of the Defendants (2-ER-238-43); (b) the similarities between Plaintiff's image and likeness and Defendants' animated character (2-ER-243-46); (c) the explicitly misleading nature of Defendants' uses of Plaintiff's image and likeness (2-ER-244-52); and (d) the actual consumer confusion (2-ER-246). On September 20, 2023, Defendants filed a motion to dismiss Plaintiff's First Amended Complaint, which was subsequently fully briefed by the parties. *See* 2-ER-12-27; 44-71; 132-160.

On October 26, 2023, the district court granted Defendants' motion to dismiss Plaintiff's First Amended Complaint and dismissed Plaintiff's claims with prejudice. 1-ER-2-3. The district court largely repeated the analysis of its August

35

23, 2023 Order in finding that Defendants' use of Plaintiff's image and likeness was protected by *Rogers v. Grimaldi*, 875 F.2d 994 (2nd Cir. 1989), as artistically relevant, and that Plaintiff had not pled sufficient allegations that Defendants explicitly misled viewers regarding the source of *Q-Force* and its advertisements. *Id.* The district court did not analyze Plaintiff's allegations that her image and likeness were used to promote Defendants' goods and services wholly unrelated to *Q-Force* and did not address Plaintiff's allegations of actual confusion in the marketplace. *See* 1-ER-2-3; *see also* 2-ER-246; 254-56. Further, the district court did not address Plaintiff's argument that the use of her image and likeness was in the nature of using a mark as a mark and trading on Plaintiff's goodwill in falsely designating an endorsement, affiliation and/or association. *See* 1-ER-2-3; *see also* 2-ER-246-47; 253-56.

In both its August 23, 2023 and its October 26, 2023 Orders, the district court rejected the relevance of the Supreme Court's ruling in *Jack Daniel's Properties, Inc. v. VIP Products, LLC*, 143 S. Ct. 1578 (2023); however, the district relegated its minimal analysis of *Jack Daniel's* to a footnote in the August 23, 2023 Order. *See* 1-ER-2-3; 2-ER-263 ("Here, the alleged infringement does not identify Plaintiff as the source of [*Q-Force*]. Therefore, controlling Ninth Circuit law requires the application of the *Rogers* test in this case."). 1-ER-2-3. In finding that *Rogers* applies to this case at the Fed. R. Civ. P. 12(b)(6) stage, the district court

36

committed reversible error in derogation of this Honorable Court's treatment of these kind of cases following *Jack Daniel's*. *See Diece-Lisa Indus. v. Disney Store USA, LLC*, No. 21-55816, 2023 U.S. App. LEXIS 23211, at *1 (9th Cir. Aug. 25, 2023); *Activision Publ'g, Inc. v. Warzone.Com, LLC*, No. 22-55831, 2023 U.S. App. LEXIS 28908, at *1 (9th Cir. Oct. 25, 2023); *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024).

## SUMMARY OF THE ARGUMENT

*Rogers* cannot immunize the use of a trademark – consisting of one's image or otherwise – to trade on the goodwill of the trademark owner. The Supreme Court made clear in *Jack Daniel's* that *Rogers* has no applicability, even in cases where there is a potentially expressive use of a mark, when a mark is used at least in part to indicate source. In such cases, the infringer's use must be analyzed for a likelihood of confusion. Similarly, the use of a mark, including the image of another, to convey a false endorsement is an act directly analogous to use of a mark to indicate source under the Lanham Act. Such false endorsement uses must be considered for a likelihood of confusion, meaning the *Rogers* analysis cannot be applied in such a case in light of *Jack Daniel's*. Any such use by an infringer to trade on the goodwill of the trademark owner cannot be immunized through the blanket application of *Rogers* under Rule 12(b)(6)*,* particularly not when the Plaintiff, as here, has sufficiently alleged infringement and actual confusion.

## STANDARD OF REVIEW

A district court's dismissal of a case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is reviewed *de novo*. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 880 (9th Cir. 2021).

## ARGUMENT

I. **The district court erred in failing to apply the likelihood of confusion test in light of the United States Supreme Court's ruling in *Jack Daniel's*.**

Plaintiffs, including celebrities, can assert false endorsement claims under the Lanham Act (15 U.S.C. § 1051 *et seq.*) for the "unauthorized imitation of their distinctive attributes, where those attributes amount to an unregistered commercial 'trademark.'" *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1106 (9th Cir. 1992). "A false endorsement claim based on the unauthorized use of a celebrity's identity is a type of false association claim, for it alleges the misuse of a trademark, […] which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Id.* at 1110.

Traditionally, Lanham Act claims have been analyzed for likelihood of confusion. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). Courts sitting in the Ninth Circuit have long employed an eight factor test to determine whether a likelihood of confusion exists: (1) the strength of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into other markets (the *Sleekcraft* factors). *Sleekcraft*, 599 F.2d at 348-49. The *Sleekcraft* factors are not

considered "exhaustive" as "[o]ther variables may come into play depending on the particular facts presented." *Id.* at 348 n.11. The *Sleekcraft* factors "should be considered together to determine, under the totality of the circumstances, whether a likelihood of confusion exists." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1161 (9th Cir. 2021).

This Honorable Court has "recognized two theories of consumer confusion that support a claim of trademark infringement: forward confusion and reverse confusion." *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 932 (9th Cir. 2017) *citing Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). "Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder." *Id.* "By contrast, reverse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one." *Id.*

This Honorable Court modifies the *Sleekcraft* factors when considering reverse-confusion cases, such as a portion of Plaintiff's claims. *Marketquest*, 862 F.3d at 934; *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998). Reverse confusion happens when "the senior user (Plaintiff) loses the value of the trademark—[her identity] […], "control over [her] goodwill and reputation, and ability to move into new markets" because her goodwill is instead in the hands

41

of the more powerful junior users, Defendants. *Ironhawk*, 2 F.4th at 1160 *quoting*

*Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 (6th Cir. 1987).

In 1987, the Second Circuit held that "in the context of allegedly misleading

*titles* using a celebrity's name[,]" the Lanham Act would not apply "unless the *title*

has no artistic relevance to the underlying work whatsoever, or, if it has some

artistic relevance, unless the title explicitly misleads as to the source or the content

of the work." *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2nd Cir. 1989) (emphasis

added). In *Brown v. Elec. Arts, Inc.*, this Honorable Court expanded the test set

forth in *Rogers v. Grimaldi* (the *Rogers* test) to apply to Lanham Act cases

involving expressive works. 724 F.3d 1235, 1242 (9th Cir. 2013) citing *Mattel,*

*Inc. v. MCA Records*, 296 F.3d 894 (9th Cir. 2002). However, the cases applying

the *Rogers* test and rejecting the likelihood of confusion test should not be relied

upon in light of the United States Supreme Court's decision in *Jack Daniel's Props.*

*Inc. v. VIP Prods. LLC*, 143 S. Ct. 1578 (2023).

In *Jack Daniel's,* The United States Supreme Court has cautioned that the

expansion of the *Rogers* test has become impermissibly broad given the

Congressional intent of the language of the Lanham Act. *Id.* at 1594. Namely, the

Supreme Court held that the First Amendment does not provide a defense to a

Lanham Act claim "when the accused infringer has used a trademark to designate

the source of its own goods—in other words, has used a trademark as a

trademark." *Id.* at 1583. "A source-identifying mark enables customers to select 'the goods and services that they wish to purchase, as well as those they want to avoid.'" *Id.* "When, instead, the use is 'at least in part' for 'source identification'—when the defendant may be 'trading on the good will of the trademark owner to market its own goods'—*Rogers* has no proper role […] even if the defendant is also 'making an expressive comment,' […] [the] defendant is still 'mak[ing] trademark use of another's mark,' and must meet an infringement claim on the usual battleground of 'likelihood of confusion.'" *Id.* at 1589. Thus, because the district court applied *Rogers* to dismiss Plaintiff's Complaint without any factual record whatsoever and by disregarding Plaintiff's properly pled allegations substantiating the likelihood of confusion, *Jack Daniel's* requires reversal. *Id.*

Even if the district court were permitted to apply *Rogers* to Plaintiff's claims, its application in this case was errant. The *Rogers* court contemplated that a violation under the Lanham Act could be found "[e]ven where a *title* surpassed the appropriately low threshold of minimal artistic relevance but was explicitly misleading as to source or content." *Rogers*, 875 F.2d at 999 (emphasis added). However, no case would ever reach the "explicitly misleading" and "consumer confusion" analysis if courts summarily granted motions to dismiss based solely on an infringer's assertion of some minimal artistic expression. *Jack Daniel's*, 143 S. Ct. at 1590 (The Ninth Circuit's expansion of *Rogers* would result in few cases

43

even reaching "the likelihood-of-confusion inquiry if all expressive content triggered the *Rogers* filter. In that event, the *Rogers* exception would become the general rule, in conflict with courts' longstanding view of trademark law.").

Here, Plaintiff asserted false endorsement claims under the Lanham Act based on Defendants' unauthorized imitation of her distinctive attributes and goodwill to designate Plaintiff as a source of *Q-Force* with the intent, and result, of confusing consumers as to Plaintiff's endorsement, affiliation and/or association and approval of *Q-Force* and Defendants' unrelated goods and services. 2-ER-243-57. Plaintiff's claims sound in forward confusion as Plaintiff alleges that Defendants' use of her image and likeness cause consumers to believe that Defendants' goods and services, including *Q-Force*, were sponsored by Plaintiff. 2-ER-253-57; *see also Marketquest*, 862 F.3d at 932. Plaintiff's claims also sound in reverse confusion as Plaintiff alleges that Defendants, as the junior users, deprived Plaintiff of the goodwill and reputation associated with her image and likeness. 2-ER-254-257; *see also Ironhawk*, 2 F.4th at 1160.

Plaintiff's claims are actionable under the Lanham Act and should have been considered under the appropriate standard: likelihood of confusion. *Waits*, 978 F.2d at 1106; 1110 (9th Cir. 1992); *Jack Daniel's*, 143 S. Ct. at 1589. Despite the clear holding in *Jack Daniel's*, the district court applied the *Rogers* test as articulated in *Brown v. Elec. Arts, Inc.* and improperly dismissed Plaintiff's claims

with prejudice. 1-ER-2-3. The district court failed to provide any analysis whatsoever of likelihood of confusion, despite Plaintiff's well-pled allegations substantiating likelihood of confusion. 1-ER-2-3. The district court thus committed reversible error in light of *Jack Daniel's*. *Jack Daniel's*, 143 S. Ct. at 1590.

As such, the district court's dismissal of Plaintiff's claims should be reversed in accordance with *Jack Daniel's*, and this case should be remanded for further proceedings consistent with the likelihood of confusion analysis under *Sleekcraft*. *Sleekcraft*, 599 F.2d 341.

## II. The district court erred by applying the *Rogers* test because *Rogers* is inapplicable when an infringer trades on the goodwill of a trademark owner and creates a false endorsement.

### A. *Jack Daniel's rejected the use of Rogers when an infringer uses a mark as a mark.*

*Jack Daniel's* makes four things clear about the applicability of *Rogers*: 1) its application as a threshold bar to claims should be a rarity, if ever; 2) it should be applied narrowly; 3) it never applies when the use of the mark is "at least in part" to designate source; and 4) the use of another's mark is not immune from liability just because such use could be considered expressive, *in part*. *Jack Daniel's*, 143 S. Ct. at 1583-89.

First, though *Rogers* was generally under attack, the Supreme Court did not go as far as to overturn the case. *See id.* at 1583 ("The infringement issue is the

more substantial.  In addressing it, we do not decide whether the threshold

[*Rogers*] inquiry applied in the Court of Appeals is **ever** warranted." (emphasis

added)).  However, the concurrence from Justice Gorsuch casts substantial doubt

on the validity of *Rogers*:

> I write separately only to underscore that lower courts should handle [*Rogers*], with care.  Today, the Court rightly concludes that, even taken on its own terms, *Rogers* does not apply to cases like the one before us.  But in doing so, we necessarily leave much about *Rogers* unaddressed.  For example, it is not entirely clear where the *Rogers* test comes from—is it commanded by the First Amendment, or is it merely gloss on the Lanham Act, perhaps inspired by constitutional-avoidance doctrine?  **For another thing, it is not obvious that *Rogers* is correct in all its particulars—certainly, the Solicitor General raises serious questions about the decision.  All this remains for resolution another day, … and lower courts should be attuned to that fact.**

*Id.* at 1594 (Gorsuch, J., concurring) (*emphasis added*) (internal citations omitted).

Second, *Rogers* is a cabined doctrine and should be interpreted narrowly.

*See id.* at 1588 ("The point is that whatever you make of *Rogers*—and again, we

take no position on that issue—it has always been a cabined doctrine.").  As a

result, the Supreme Court cast doubt on overbroad applications of the *Rogers* test:

> As a leading treatise puts the point, the Ninth Circuit's expansion of *Rogers* "potentially encompasses just about everything" because names, phrases, symbols, designs, and their varied combinations often "contain some 'expressive' message" unrelated to source. 6 McCarthy § 31:144.50 […] But few cases would even get to the likelihood-of-confusion inquiry if all expressive content triggered the *Rogers* filter.  In that event, the

> *Rogers* exception would become the general rule, in conflict with courts' longstanding view of trademark law.

*Jack Daniel's* at 1590.

Third, importantly here, the Supreme Court held that Rogers *never* applies when the infringer is using a trademark as a trademark. *See id.* at 1587 ("Without deciding whether *Rogers* has merit in other contexts, we hold that it does not when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods."); *id.* at 1583 ("That kind of use falls within the heartland of trademark law, and does not receive special First Amendment protection."). The Supreme Court held that *Rogers* is inapplicable when "the use is 'at least in part' for 'source identification' –when the defendant may be 'trading on the good will of the trademark owner to market its own goods.'" *Id.* at 1589 (quoting *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 414-15 (S.D.N.Y. 2002)). By analogy, *Rogers* must equally be inapplicable when, as here, the Defendants used Plaintiff's image for false endorsement, trading on the goodwill of the Plaintiff, if even in part. In this instance, the distinction between false designation of source and false endorsement, association and/or affiliation is immaterial, as both trigger the likelihood of confusion analysis because the prohibition of both infringing acts emanates from a single section of the Lanham Act:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).

Fourth, and also important in this case, it does not matter whether the infringer is using the mark in some other way—even an expressive one. *See Jack Daniel's*, 143 S. Ct. at 1589 ("And that is so, the court continued, even if the defendant is also 'making an expressive comment,' including a parody of a different product. The defendant is still 'mak[ing] trademark use of another's mark,' and must meet an infringement claim on the usual battleground of 'likelihood of confusion.'"). Use of "any false or misleading description of fact, or false or misleading representation of fact, which is likely to […] deceive as to the […] sponsorship, or approval of his or her goods" is categorically an infringement, and claims of such a nature must be considered for a likelihood of confusion. *See* 15 U.S.C. § 1125(a)(1)(A).

*Assume arguendo*, that Defendants had not created *Q-Force*. Instead, consider in isolation the *Q-Force* "Official Teaser" posted by Defendants to the Netflix YouTube page, which prominently featured Plaintiff's image and likeness

48

and was used to advertise unrelated products including trading cards featuring art from the show *Stranger Things* and a *Yu-Gi-Oh* BE@RBRICK toy.  2-ER-247-48. Undoubtedly, the Lanham Act would protect against such a false endorsement.  *See* 15 U.S.C. § 1114(1)(a); 15 U.S.C. § 1125(a)(1)(A).

Here, not only did Defendants use of Plaintiff's image and likeness to advertise unrelated commercial goods and services, but Defendants also used Plaintiff's image and likeness in both the *Q-Force* "Official Teaser" and in *Q-Force* to falsely imply an endorsement of *Q-Force* by Plaintiff, a prominent member of the LGBTQ+ community.  2-ER-247-49.  In doing so, Defendants traded on Plaintiff's goodwill in the LGBTQ+ community, which was the target demographic for *Q-Force*.  2-ER-252-56.  Despite the clear holding in *Jack Daniel's*, the district court cited *Rogers* to provide blanket immunity to Defendants from Plaintiff's false endorsement claims based solely on the disputed premise that Defendants also used Plaintiff's image and likeness in an expressive work.  1-ER-2-3.  In light of the Supreme Court's ruling in *Jack Daniel's*, the district court's application of *Rogers* and the resulting dismissal were legal error and therefore warrant reversal.  *Jack Daniel's*, 143 S. Ct. at 1583-89.

**B. *Rogers does not apply here because Defendants traded on the goodwill of Plaintiff's image and likeness and created a false endorsement, association and/or affiliation.***

In applying the Supreme Court's ruling in *Jack Daniel's* to the facts of this case, it is readily apparent that the *Rogers* test is not applicable to Defendants' use of Plaintiff's image. Defendants are not using Plaintiff's image to express commentary about Plaintiff, as Aqua did about Barbie via "*Barbie Girl*" (at issue in *Mattel*, 296 F.3d 894); they are not using Plaintiff's image in a manner implicating "First Amendment values," as in "*Ginger and Fred*" (at issue in *Rogers*, 875 F.2d 994) (*see Jack Daniel's*, 143 S. Ct. at 1589); rather, Defendants are using Plaintiff's image to create the false impression among consumers that Plaintiff – a prominent LGBTQ+ artist – approves of, endorses, and is affiliated and/or associated with *Q-Force*, and perhaps more concerning, the Defendants' unrelated products and services advertised in connection with the *Q-Force* "Official Teaser" as streamed on YouTube; and the Stills used of Plaintiff's image and likeness to promote the wholly unrelated goods and services of Defendants. 2-ER-245; 247-50; 252-54.

In *Empire* – a case predating *Jack Daniel's* – this Honorable Court expanded *Rogers* only to include the use of the *title* of an expressive work, EMPIRE, to "Empire"-branded merchandise sold to promote the show. *See Twentieth Century Fox Television v. Empire Distrib.*, 875 F.3d 1192 (9th Cir. 2017). This was because all of the products bore the name EMPIRE, which was important to this Honorable Court because "[t]he balance of First Amendment interests struck in *Rogers* and *Mattel* [296 F.3d 894] could be destabilized if the titles of expressive works were

protected but could not be used to promote those works." *Id.* at 1197. Defendants'
use of Plaintiff's image, likeness, and the goodwill associated therewith, in this
case is a far cry from using the title of an expressive work to advertise products
related to that same expressive work. *Id.* Here, Defendants impermissibly used
the goodwill associated with Plaintiff's image and likeness to imply a false
endorsement, association and/or affiliation with completely unrelated commercial
goods and services, setting aside the false endorsement, association and/or
affiliation of an expressive work, which is commercial in nature. 2-ER-245; 247-
50; 252-54.

The importance of the Supreme Court's ruling in *Jack Daniel's* to this case
cannot be overstated. In a similar case, plaintiff, Diece-Lisa Industries, Inc.,
challenged Disney's use of the "Lots of Hugs Bear" toys in *Toy Story 3* under the
Lanham Act. *Diece-Lisa Indus. v. Disney Store USA, LLC*, No. 21-55816, 2022
U.S. App. LEXIS 15935, at *1 (9th Cir. June 9, 2022) (vacated and remanded). In
district court, the toymaker challenged the expansive application of *Rogers* in the
context of misappropriation in film that expanded into commercial products
(namely, toys). *See Diece-Lisa Indus. v. Disney Enters. (Diece-Lisa Indus. I)*, No.
CV 20-09147 TJH (JCx), 2021 U.S. Dist. LEXIS 146187, at *2 (C.D. Cal. July 7,
2021) (vacated and remanded). The case was decided in favor of the Disney
Defendants at the motion for summary judgment phase with the district court

51

applying *Rogers* and finding that the plaintiff "failed to set forth any admissible evidence that the Disney Defendants explicitly misled consumers about the source or content of the work." *Id.* at *10.

Although this Honorable Court initially affirmed the decision of the district court, the Supreme Court remanded the case for reconsideration in light of *Jack Daniel's* and in doing so this Honorable Court remanded to the district court. *Diece-Lisa Indus. v. Disney Store USA, LLC*, 143 S. Ct. 2634 (2023); *see also Diece-Lisa Indus. v. Disney Store USA, LLC (Diece-Lisa Indus. II)*, No. 21-55816, 2023 U.S. App. LEXIS 23211, at *1 (9th Cir. Aug. 25, 2023).

Plaintiff's case clearly requires departure from *Rogers* application following *Jack Daniel's*. First, the instant case is even more egregious than the infringement in *Diece-Lisa* because the goodwill embodied in Plaintiff's image and likeness is not only used to create a false endorsement, affiliation and/or association with *Q-Force*, but also to endorse Defendants' commercial goods and services that are *wholly unrelated* to *Q-Force*. *Id.*; *see also* 2-ER-245; 247-50; 252-54. Further, the false endorsement, affiliation and/or association created by Defendants' use of Plaintiff's image is directly analogous to the cases finding *Rogers* to be inapplicable to in light of *Jack Daniel's*. *See Diece-Lisa Indus. II*, 2023 U.S. App. LEXIS 23211 (remanded in light of *Jack Daniel's*); *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125 (2nd Cir. 2023) (*per curiam*) (affirming the issuance of a

preliminary injunction in part because the "district court was correct when it applied the traditional likelihood-of-confusion test instead of applying the *Rogers* test where "MSCHF sought to benefit from the 'good will' that Vans […] had generated."); *HomeVestors of Am., Inc. v. Warner Bros. Discovery, Inc.*, Civil Action No. 22-1583-RGA, 2023 U.S. Dist. LEXIS 187653, at *1 (D. Del. Oct. 18, 2023) (denying motion because "neither party could articulate a test or method for determining, at the motion to dismiss stage or otherwise, whether an allegedly infringing mark is being used in a source-identifying way."); *Mga Entm't Inc. v. Harris*, No. CV 20-11548 JVS (AGRx), 2023 U.S. Dist. LEXIS 171072, at *14 (C.D. Cal. Sep. 15, 2023) (granting new trial because the jury erroneously received instructions pertaining to *Rogers* that should not have been given in light of *Jack Daniel's*."); *Davis v. Amazon.Com, Inc.*, No. 2:21-cv-02090-JVS(JDEx), 2023 U.S. Dist. LEXIS 197341, at *15 (C.D. Cal. Nov. 2, 2023) (finding that "[w]hile a source-identifying film title may have an expressive aspect, it may no longer seek shelter under *Rogers* from the Lanham Act likelihood-of-confusion test following *Jack Daniel's*.").

Moreover, Plaintiff sufficiently alleged actual consumer confusion and was denied the opportunity to conduct any discovery relating to actual consumer confusion and Defendants' intent relating to the use of Plaintiff's image and likeness, along with discovery pertinent to all other *Sleekcraft* factors. 2-ER-246;

254-56; *see also* *Sleekcraft*, 599 F.2d at 348. Similar to *Diece-Lisa*, the district court erred in this case by applying *Rogers* to Plaintiff's reverse-confusion theory because in doing so, the more powerful junior users will always prevail. *See Ironhawk*, 2 F.4th at 1162-63; *see also Diece-Lisa Indus. II*, 2023 U.S. App. LEXIS 23211. Indeed, the district court's error of law is even more egregious considering that it was made summarily and as a threshold bar at the pleading stage without providing Plaintiff the ability to conduct any discovery. 1-ER-2-3. At minimum, the district court should have permitted discovery on the issues of Defendants' intent in using Plaintiff's trademark embodied in her character's image and likeness or the resulting actual confusion in the marketplace, especially considering [e]ach of the *Sleekcraft* factors presents a highly factual inquiry that considers competing evidence." *Ironhawk*, 2 F.4th at 1169.

In ruling on Defendants' Rule 12(b)(6) motion, the district court was required to construe the complaint in the light most favorable to the Plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff's First Amended Complaint contained allegations of not only Defendants intent to trade on Plaintiff's goodwill but also as to actual confusion in the marketplace related to

54

Defendants' unauthorized use of Plaintiff's image and likeness. 2-ER-246; 253-56. Without permitting discovery, the district court impermissibly made findings in favor of Defendants, which weigh against Plaintiff's well pleaded allegations. *See Gompper*, 298 F.3d at 896. Surely, these allegations would have been sufficient to overcome a Rule 12(b)(6) challenge under the appropriate test: likelihood of confusion. *Ironhawk*, 2 F.4th at 1169; *see also Sleekcraft*, 599 F.2d 341.

**C. *This Honorable Court should require the district court to consider this case in conformity with Jack Daniel's and should direct the district court to require the Defendants to answer and proceed to discovery.***

The district court's decision to dismiss Plaintiff's case is out of step with this Honorable Court's guidance in the post-*Jack Daniel's* jurisprudence. In addition to the *Diece-Lisa* case, other cases that have been remanded to district courts for further consideration in light of *Jack Daniel's* dictate that this case should also be remanded. *See Diece-Lisa Indus. II*, 2023 U.S. App. LEXIS 23211, at *1; *Activision Publ'g, Inc. v. Warzone.Com, LLC*, No. 22-55831, 2023 U.S. App. LEXIS 28908, at *1 (9th Cir. Oct. 25, 2023); *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024).

First, in *Diece-Lisa*, the plaintiff, following discovery and at the motion for summary judgment phase, advanced a theory of reverse confusion, arguing that the *Rogers* test has no application to such an analysis and that likelihood of confusion under the *Sleekcraft* factors at trial is the appropriate path for the resolution of the

dispute. Brief of Plaintiff-Appellant at 21-34, *Diece-Lisa Indus v. Disney Store USA, LLC,* No. 21-55816 (9th Cir. December 8, 2021). The United States' Supreme Court remanded to this Honorable Court in light of *Jack Daniel's* and this Honorable Court remanded to the district court in light of *Jack Daniel's*. *Diece-Lisa Indus*, 143 S. Ct. 2634 (2023); *see also Diece-Lisa Indus. II*, 2023 U.S. App. LEXIS 23211, at *1.

This Honorable Court recently vacated a district court's similar order in *Activision v. Warzone.com, LLC* and remanded for further consideration in light of *Jack Daniel's*. *Activision*, 2023 U.S. App. LEXIS 28908, at *1. In remanding to that district court, this Honorable Court implicitly rejected Activision's argument that *Rogers* supported the district court's dismissal of Warzone.com, LLC's claims as a matter of law and without leave to amend. *Id. Activision*, like *Rogers*, involves a trademark claim arising from the title of an expressive work (a video game). *Activision Publ'g, Inc. v. Warzone.Com, LLC*, 621 F. Supp. 3d 1090, 1093 (C.D. Cal. 2022) (vacated and remanded).

This Honorable Court's order in *Punchbowl, Inc. v. AJ Press, LLC* is similarly instructive. *Punchbowl, Inc. v. AJ Press, LLC (Punchbowl III)*, 90 F.4th 1022 (9th Cir. 2024). *Punchbowl* involved a dispute between two trademark registrants over the use of the wordmark "Punchbowl." *Id.* at 1024. After the Supreme Court decided *Jack Daniel's*, the *Punchbowl* Court withdrew its previous

affirmation of a district court decision granting summary judgment in favor of an accused trademark infringer after application of the *Rogers* test. *Id.* at 1024; *see also Punchbowl, Inc. v. AJ Press, LLC (Punchbowl II)*, 78 F.4th 1158, 1158 (9th Cir. 2023); *Punchbowl, Inc. v. AJ Press, LLC (Punchbowl I)*, 52 F.4th 1091, 1095 (9th Cir. 2022) (withdrawn). In remanding the *Punchbowl* case, this Honorable Court explicitly rejected AJ Press, LLC's argument that *Rogers* applies and held that AJ Press must thus "meet the infringement claim on the usual battleground of 'likelihood of confusion.'" *Punchbowl III*, 90 F.4th at 1032 citing *Jack Daniel's*, 143 S. Ct. at 1589. Indeed, the district court in *Punchbowl* has now acknowledged that the case will proceed under "the traditional likelihood-of-confusion test." Order for Additional Briefing, *Punchbowl, Inc. v. AJ Press, LLC*, No. 2:21-cv-03010-SVW-MAR (C.D. Cal. January 25, 2024), ECF No. 47.

The Supreme Court was clear in *Jack Daniel's* that "the First Amendment does not demand a threshold inquiry like the *Rogers* test. When a mark is used as a mark (except, potentially, in rare situations), the likelihood-of-confusion inquiry does enough work to account for the interest in free expression." *Jack Daniel's*, 143 S. Ct. at 1591. Therefore, cases decided under a faulty analysis, such as here, must be reversed and remanded to be consistent with *Jack Daniel's*. *Id.*; *see also Punchbowl III*, 90 F.4th at 1032.

Plaintiff's trademark embodied in her character's image and likeness was used by the Defendants in numerous ways, including: (1) to advertise their goods and services that were both related and unrelated to *Q-Force*; and (2) to falsely designate Plaintiff's affiliation, association and endorsement in violation of the Lanham Act and the First Amendment's prohibition of compelled endorsement. 2-ER-245-50; 252-56. The district court's reliance on *Rogers* and refusal to acknowledge the applicability of *Jack Daniel's* is not supported by this Honorable Court's treatment of trademark infringement cases in the wake of *Jack Daniel's*. *See Diece-Lisa Indus. II*, 2023 U.S. App. LEXIS 23211, at *1; *Activision*, 2023 U.S. App. LEXIS 28908, at *1; *Punchbowl III*, 90 F.4th 1022.

As the Honorable Daniel A. Bress correctly observed in the oral arguments in a recent case, *Punchbowl III*, the Supreme Court made "major changes" to the body of law surrounding *Rogers* because the Supreme Court completely "re-vamped this area [of law] […] [which was] only narrow in the sense that it did not eradicate *Rogers* all together." Oral Argument at 40:02, *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024) (No. 21-55881), https://www.youtube.com/watch?v=qDaAviVTzqs. Indeed, during oral argument before this Honorable Court, the infringer (*AJ Press, LLC*) relied upon Judge Hon. R. Gary Klausner's October 26, 2023 Order in this case in arguing that the *Rogers* test application remains the law of the Ninth Circuit. *Id.* at 26:30. That infringer's

58

argument was insufficient to overcome the application of *Jack Daniel's* by this Honorable Court in a manner which, if consistently applied to Plaintiff's case, would similarly require reversal and remand. *See Punchbowl III*, 90 F.4th at 1024.

This Honorable Court, consistent with the instructions of the Supreme Court, has signaled that the correct analysis is to determine the likelihood of confusion. *See, e.g. AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). The Supreme Court admonished against the blanket use of *Rogers* to dismiss infringement claims involving expressive works, an admonishment which the district court failed to heed when dismissing Plaintiff's case. *Jack Daniel's*, 143 S. Ct. at 1591. Rather than applying the *Sleekcraft* factors to assess Plaintiff's First Amended Complaint, the district court incorrectly concluded that Defendants' use of Plaintiff's image and likeness was "expressive" and then proceeded directly to a *Rogers* analysis. 1-ER2-3. The district court's "shortcut to dismissal" of Plaintiff's claims is no longer the correct standard after *Jack Daniel's*. *Id.* at 1589.

To allow *Rogers* to immunize Defendants from liability for using Plaintiff's image to falsely imply endorsement of goods and services wholly unrelated to *Q-Force* would expand *Rogers* so far as to encapsulate nearly every case of false endorsement – an impermissible erasure of the Lanham Act. *See Jack Daniel's*, 143 S. Ct. at 1590. Similarly, to immunize Defendants from using Plaintiff's image to falsely imply endorsement of *Q-Force* not only fails to uphold the "First

Amendment values" at issue in *Rogers*, but it undermines those values as to Plaintiff; preventing Plaintiff from taking action against the use of her image to imply a false endorsement is akin to a compelled endorsement. *See Rogers*, 875 F.2d at 998. Such compelled speech is not compatible with First Amendment values. *See e.g.*, *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943). This is particularly true when the image embodied in the Vicky Vox character is the artistic and First Amendment expression belonging only to Plaintiff, herself. 2-ER-251.

## CONCLUSION

For the foregoing reasons, the district court's decision to dismiss Plaintiff's claims with prejudice in its October 26, 2023 Order should be reversed, and the case remanded for further proceedings, including but not limited to requiring Defendants to answer Plaintiff's First Amended Complaint and requiring the Parties to engage in discovery.

Date: March 15, 2024          Respectfully Submitted,
VALKYRIE LAW GROUP, P.C.

/s/ Heather L. Blaise
Heather L. Blaise
John H. Mattheessen

*Attorneys for Appellant Lance Hara p/k/a Vicky Vox*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 23-3768

The undersigned attorney or self-represented party states the following:

(●) I am unaware of any related cases currently pending in this court.

( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/Heather L. Blaise | **Date** | Mar 15, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 17** *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-3768

I am the attorney or self-represented party.

**This brief contains** | 12,008 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [ ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Heather L. Blaise | **Date** | 3/15/2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*